**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-295** |
| **WILLIAM F. DUNBAR, SR.** | : | |

# GOVERNMENT'S PLEA MEMORANDUM

## I. INTRODUCTION

The defendant, William F. Dunbar, Sr., has agreed to plead guilty to Counts One through Four of an information, waiving prosecution by indictment, charging him with tax evasion, in violation of 26 U.S.C. § 7201 (Count One), tax evasion and aiding and abetting, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2 (Count Two), filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count Three), and aiding the filing of a false tax return in violation of 26 U.S.C. § 7206(2) (Count Four). These charges arise from the defendant evading the assessment of taxes and filing false returns for himself and Person #1 for the tax years 2019 through 2024. This Court has scheduled an Arraignment and Plea Hearing for July 29, 2026, at 9:30 a.m.

## II. STATUTORY MAXIMUM PENALTIES

The Court may impose the following statutory maximum sentences: For each of Counts One and Two, charging tax evasion, a term of imprisonment of five years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100; and for each of Counts Three and Four, charging filing a false return and aiding the filing of a false return, respectively, a term of imprisonment of three years, a term of supervised release of one year, a

fine of $250,000, and a special assessment of $100. The total permissible statutory maximum sentence is a term of imprisonment of 16 years, a term of supervised release of three years, a fine of $1,000,000, and a special assessment of $400. Full restitution also may be ordered.

## III. ELEMENTS OF THE OFFENSES

### A. Tax Evasion (Counts One and Two)

To establish a violation of 26 U.S.C. § 7201 (tax evasion), the government must prove the following elements beyond a reasonable doubt:

1. the defendant engaged in an affirmative attempt to evade or defeat a tax assessment;

2. there was a substantial additional tax due and owing; and

3. the defendant acted willfully.

*See* Third Circuit Model Jury Instructions, 6.26.7201

### B. Making and Subscribing False Tax Return (Count Three)

To establish a violation of 26 U.S.C. § 7206(1), the government must prove the following elements beyond a reasonable doubt:

1. the defendant made, subscribed, and filed an income tax return;

2. the tax return contained a written declaration that it was made under the penalties of perjury;

3. the return was false as to a material matter;

4. the defendant did not believe the return to be true and correct as to that material matter; and

5. the defendant acted willfully.

*See* Third Circuit Model Jury Instructions, 6.26.7206.

### C. Aiding and Assisting the Presentation of False Tax Returns (Count Four)

To establish a violation of 26 U.S.C. § 7206(2), the government must prove the following elements beyond a reasonable doubt:

1. the defendant aided, assisted, or otherwise caused the making, subscribing, and filing of a tax return;

2. the tax return contained a written declaration that it was made under the penalties of perjury;

3. the tax return was false as to a material matter;

3. the defendant did not believe the tax return to be true and correct as to that material matter; and

4. the defendant acted willfully.

*See United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003).

**D. <u>Aiding and Abetting</u>**

To establish that the defendant committed an offense under an aiding and abetting theory of liability under 18 U.S.C. § 2, the government must prove the following elements beyond a reasonable doubt:

1. the principal, or another participant in the scheme, committed the charged offense as set forth above;

2. the defendant knew that this offense was going to be committed or was committed by the principal, or another participant in the scheme;

3. the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal, or other participant in the scheme, in committing this offense; and

4. the defendant performed an act in furtherance of this offense.

*See* Third Circuit Model Criminal Jury Instructions, 7.02.

## IV. FACTUAL BASIS FOR THE PLEA

If this case were to proceed to trial, the government would prove the following facts beyond a reasonable doubt through witness testimony and exhibits.

### A. Background Facts for Time Period Charged in Information

The defendant, William F. Dunbar, Sr. ("Dunbar"), was a resident of Pennsburg, in the Eastern District of Pennsylvania. Dunbar was a political consultant who performed work for various individual and corporate clients. In 2022, Dunbar established Dunbar Public Affairs & Associates ("DPAA"), a political consulting firm that he operated in Philadelphia, Pennsylvania. On its website, DPAA described itself as a "national boutique, bipartisan public affairs, and strategic communications firm." Dunbar owned and operated DPAA from 2022 to the present. Person #1 was the spouse of Dunbar and a resident of Pennsburg. Person #1 was a Director of Inclusion and Diversity at a pharmaceutical company.

Dunbar managed finances in his household. In that role, he prepared and filed federal and state individual income tax returns annually for himself and Person #1 in the Eastern District of Pennsylvania through TurboTax. TurboTax was an interview-based online tax preparation service that guided users through filing federal and state tax returns by asking simple questions, importing Forms W-2, and populating various tax forms and schedules based on the information provided by the user. Defendant elected to file and cause Person #1 to file separate tax returns as opposed to filing jointly.

**B. The Tax Fraud Activity**

For each of the tax years 2019 through 2024, Dunbar prepared the personal federal tax returns for himself and Person #1. Each of the tax returns contained a written declaration that it was made under the penalties of perjury. Each of the tax returns contained material falsehoods. In particular, Dunbar grossly and falsely inflated the gifts to charity on both his and Person #1's returns and grossly and falsely inflated the business expenses on his returns. He did so for the purpose of evading the assessment of taxes as the false charitable gifts and business expenses eliminated, or substantially reduced, the tax liability on both his and Person #1's returns and, in most years, generated tax refunds for them. The parties have stipulated in their plea agreement that the total tax loss to the United States from the false returns for the defendant and Person #1 from 2019 through 2024 was between $350,000 and $750,000.

Dunbar prepared the returns for each of the tax years 2019 through 2024 with Turbo Tax and filed them electronically, using a self-selected personal identification number as the means of signing. When interviewed in 2025 by agents from the Federal Bureau of Investigation, Dunbar said that he prepared and filed the tax returns himself without the assistance or involvement of Person #1.

When Dunbar learned in 2025 that he was under investigation for tax fraud, he engaged an accountant and prepared amended returns for the tax years 2019 through 2024. The amended returns reflect substantial reductions in the charitable and business deductions that he had claimed on the original returns. The amended returns further demonstrate that the original returns were false and fraudulent.

Thus, as set forth in Count One and Two of the Information, for the tax years 2019 through 2024, Dunbar willfully attempted to evade and defeat a large part of the income tax due and owing by him to the United States of America, by committing the following affirmative acts, among others: (a) claiming false, fraudulent, and exaggerated gifts to charity on the Schedule A forms to his and Person #1's individual income tax returns, Forms 1040; (b) claiming false, fraudulent, and exaggerated business expenses on his Schedule C forms and Forms 2106 to his Forms 1040; and (c) preparing, signing, and filing false and fraudulent Forms 1040 for himself and (and causing the same for Person #1), which returns substantially understated his taxable income and his tax due and owing.

For example, as set forth in Count Three of the Information, Dunbar's tax year 2024 Form 1040 was false in that the return reported: (i) total business expenses of $1,450,100 (Form 2106, line 10); (ii) taxable income of $0 (Form 1040, line 15); and (iii) total tax owed of $46,091 (Form 1040, line 37); when, as Dunbar knew, his total business expenses were materially less and his total taxable income and his total tax owed were materially greater. Dunbar subscribed (and filed) this return with a written declaration that it was made under penalty of perjury on or about February 6, 2025.

Similarly, as set forth in Count Four of the Information, Person #1's tax year 2024 Form 1040 was false in that the return reported: (i) gifts to charity of $171,178 (Schedule A, line 14); (ii) taxable income of $97,909 (Form 1040, line 15); and (iii) a tax amount overpaid of $38,628 (Form 1040, line 34); when, as Dunbar knew, Person #1's gifts to charity were materially less and Person #1's taxable income and tax owed was materially greater. Dunbar subscribed (and

filed) this return with a written declaration that it was made under penalty of perjury on or about January 26, 2025.

Considering all the tax years comprising the tax evasion charges, the returns include the following material falsehoods, among others:

For tax year 2019, the returns for Dunbar and Person #1 reflect a total of approximately $81,570 in gifts to charity. On Dunbar's 2019 return, he also claimed approximately $112,717 in business expenses. As reflected in the amended returns and other records, their actual gifts to charity and actual business expenses were substantially less. For example, on the joint amended return for tax year 2019, Dunbar and Person #1 claimed only $3,290 in gifts to charity.[1] For tax year 2019, the falsely claimed gifts to charity and business expenses resulted in Dunbar claiming a tax refund of $4,815 and Person #1 claiming a tax refund of $24,273 for tax year 2019 to which they were not entitled. Rather, the returns for both Dunbar and Person #1 should have reflected substantially more taxes due and owing.

For tax year 2020, the returns for Dunbar and Person #1 include a total of approximately $76,750 in gifts to charity. On Dunbar's 2020 return, he also claimed approximately $74,067 in business expenses. As reflected in the amended returns and other records obtained by the government, their actual gifts to charity and actual business expenses were substantially less. For example, on the joint amended return for tax year 2020, Dunbar and Person #1 claimed no gifts to charity. For tax year 2020, the falsely claimed gifts to charity and business expenses resulted in Dunbar claiming a tax refund of $17,971 and Person #1 claiming a tax refund of $23,328 to

[1] For each of the relevant tax years, the government's investigation shows the potential for a small number of additional amounts that could have been claimed as gifts to charity, but nothing that would begin to justify the amounts claimed in the original returns.

which they were not entitled. Rather, the returns for both Dunbar and Person #1 should have reflected substantially more taxes due and owing.

For tax year 2021, the returns for Dunbar and Person #1 include a total of approximately $168,813 in gifts to charity. On Dunbar's 2021 return, he also claimed approximately $139,712 in business expenses. As reflected in the joint amended returns and other records obtained by the government, their actual gifts to charity and actual business expenses were substantially less. For example, on the joint amended return for tax year 2021, Dunbar and Person #1 claimed $1,450 in gifts to charity. For tax year 2021, the false returns resulted in Dunbar claiming a tax refund of $17,573 and Person #1 claiming a tax refund of $30,031 to which they were not entitled. Rather, the returns for both Dunbar and Person #1 should have reflected substantially more taxes due and owing.

For tax year 2022, the returns for Dunbar and Person #1 include a total of approximately $165,277 in gifts to charity. On Dunbar's 2022 return, he also claimed approximately $216,955 in business expenses. As reflected in the joint amended returns and other records obtained by the government, their actual gifts to charity and actual business expenses were substantially less. For example, on the joint amended return for tax year 2022, Dunbar and Person #1 claimed only $1,700 in gifts to charity. For tax year 2022, the false returns resulted in Dunbar claiming a tax refund of $16,296 and Person #1 claiming a tax refund of $33,179 for tax year 2022 to which they were not entitled. Rather, the returns for both Dunbar and Person #1 should have reflected substantially more taxes due and owing.

For tax year 2023, the returns for Dunbar and Person #1 include a total of approximately $185,000 in gifts to charity. On Dunbar's 2023 return, he also claimed approximately $321,300

in business expenses. As reflected in the joint amended returns and other records obtained by the government, their actual gifts to charity and actual business expenses were substantially less. For example, on the joint amended return for tax year 2023, Dunbar and Person #1 claimed only $2,000 in gifts to charity. For tax year 2023, the false returns resulted in Dunbar claiming a tax refund of $30,783 and Person #1 claiming a tax refund of $36,530 to which they were not entitled. Rather, the returns for both Dunbar and Person #1 should have reflected substantial additional taxes due and owing.

For tax year 2024, the returns for Dunbar and Person #1 include a total of approximately $171,178 in gifts to charity.[2] On Dunbar's 2024 return, he also claimed approximately $1,450,100 in business expenses. As reflected in the joint amended returns and other records obtained by the government, their actual gifts to charity and actual business expenses were substantially less. For example, on the joint amended return for tax year 2024, Dunbar and Person #1 claimed only $6,810 in gifts to charity. For tax year 2024, the false returns resulted in Dunbar claiming $0 in taxable income and Person #1 claiming a tax refund of $38,628 to which she was not entitled. Rather, the returns for both Dunbar and Person #1 should have reflected substantial additional taxes due and owing.

[2] Dunbar attempted to claim substantially more in gifts to charity for tax year 2024 (as much as $650,000) when inputting information for his return in the Turbo Tax program, but the program rejected that amount when making final calculations based on other figures he had entered.

## V. <u>PLEA AGREEMENT</u>

The parties have executed a plea agreement that will be presented to the Court during a hearing regarding entry of the guilty plea. The agreement includes a supplement to be filed under seal.

## VI. <u>CONCLUSION</u>

The government requests that the Court conduct a hearing under Federal Rule of Criminal Procedure 11 and if warranted, then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Louis D. Lappen*______________
LOUIS D. LAPPEN
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Plea Memorandum to be served by e-mail upon the following counsel for the defendant:

Brian McMonagle
1845 Walnut Street, 19th Floor
Philadelphia, PA 19103
bmcmonagle@mpmc.com

*/s/ Louis D. Lappen*
LOUIS D. LAPPEN
Assistant United States Attorney

Date: July 23, 2026