**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-295** |
| **WILLIAM F. DUNBAR, SR.** | : | |

## GUILTY PLEA AGREEMENT

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

1. The defendant agrees to plead guilty to Counts One through Four of an information, waiving prosecution by indictment, charging him with tax evasion, in violation of 26 U.S.C. § 7201 (Count One), tax evasion and aiding and abetting, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2 (Count Two), filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count Three), and aiding the filing of a false tax return in violation of 26 U.S.C. § 7206(2) (Count Four), all arising from the defendant evading the assessment of taxes and filing false returns for himself and Person #1 for the tax years 2019 through 2024. The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

2. The defendant understands, agrees, and has had explained to him by counsel that, the following statutory maximum sentences apply in this case: For each of Counts One and Two, charging tax evasion, a term of imprisonment of five years, a term of supervised release of three years, a fine of $250,000, and a special assessment of $100; and for each of Counts Three and

Four, charging filing a false return and aiding the filing of a false return, respectively, a term of imprisonment of three years, a term of supervised release of one year, a fine of $250,000, and a special assessment of $100. The total permissible statutory maximum sentence is a term of imprisonment of 16 years, a term of supervised release of three years, a fine of $1,000,000, and a special assessment of $400. Full restitution also may be ordered. The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to two years on each of Counts One and Two and up to one year on each of Counts Three and Four. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

3. The government may:

a. Make whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the government deems appropriate.

b. Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

c. Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

4. In order to facilitate the collection of the criminal monetary penalties to be imposed in connection with this prosecution, the defendant agrees fully to disclose all income, assets, liabilities, and financial interests, held directly or indirectly, whether held in his own name or in the name of a relative, spouse, associate, another person, or entity, and whether held in this country or outside this country. Accordingly:

a. The defendant will submit a completed Financial Statement of Debtor to the U.S. Attorney's Office, in a form it provides and as it directs, within 14 days of execution of this plea agreement. The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

b. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any monetary penalty imposed by the Court.

c. Upon request by the United States, the defendant also agrees to submit to a financial deposition or interview prior to sentencing and provide all documents within the defendant's possession or control as requested by the U.S. Attorney's Office regarding the defendant's financial resources and that of the defendant's household.

d. The defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States or victims. The defendant otherwise shall not devalue any property worth more than $1,000 before sentencing, without the prior approval of the United States.

e. The defendant also agrees to execute any documents necessary to release any funds held in any repository, bank, investment, other financial institution, or any other

location in order to make partial or total payment toward any monetary penalty that the Court may impose.

f. If the defendant fails to comply with this paragraph of the plea agreement or if any of the defendant's representations pursuant to the requirements set forth in this paragraph are false or inaccurate, the government may elect to: void this agreement; and/or argue that the defendant is not entitled to a downward adjustment for acceptance of responsibility under Guideline Section 3E1.1.

5. The defendant agrees to pay a fine and restitution as ordered by the Court. The defendant agrees that restitution shall include losses caused by the defendant's additional misconduct as discussed below in paragraph 10. The defendant agrees that any restitution or fine imposed by the Court shall be due and payable immediately and on such terms and conditions that the Court may impose. In the event the Court imposes a schedule for the payment of restitution or fine, the defendant understands and agrees that such a schedule represents a minimum payment obligation and does not preclude the United States Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation under applicable federal and/or state law.

6. The defendant agrees that forfeiture, restitution, fine, assessment, tax, interest, or other payments in this case do not constitute extraordinary acceptance of responsibility or provide any basis to seek a variance from the applicable Sentencing Guideline range.

7. The defendant agrees to pay the special victims/witness assessment in the amount of $400 before the time of sentencing and shall provide a receipt from the Clerk to the government before sentencing as proof of this payment.

8. The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

9. Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, and adjustments; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

a. The parties agree and stipulate that under USSG § 2T1.1(a)(1) and 2T4.1, the base offense level for the tax offenses in this case shall be calculated based on a tax loss of more than $350,000 but less than $750,000.

b. The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

c. The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b), if such a downward adjustment is applicable under the Sentencing Guidelines.

d. The parties agree and stipulate that, under USSG § 4C1.1, the defendant may receive a 2-level downward adjustment if he satisfies the criteria for "Certain Zero-Point Offenders" as set forth in USSG § 4C1.1(a).

e. The parties agree and stipulate that the parties will jointly recommend to the Court that sentencing in this matter should proceed after November 1, 2026.

10. The parties further agree and stipulate to the following concerning additional uncharged misconduct of the defendant. The parties agree that at the time of sentencing the government will present summary evidence, at its discretion, through documents and/or the summary testimony of an agent (and/or through stipulations of the parties) in the following three matters. The defendant agrees that he in fact engaged in misconduct in connection with these matters (the "additional misconduct") but retains the right to offer further explanation for his conduct in connection with these matters. The parties agree that the Court can consider the additional misconduct in deciding an appropriate sentence for the charged tax offenses as part of the defendant's history and characteristics under 18 U.S.C. § 3553(a)(1). The parties further agree that the government will not seek an upward variance from the applicable guideline range based on the additional misconduct but will rely on this information in its recommendation of an appropriate sentence within the applicable guideline range.

a. From in or about 2017 through in or about 2025, the defendant, who has three children who were attending a private school where the average annual tuition was approximately $40,000 per student, submitted false tax returns and financial documents in connection with financial aid applications. Submitting these false documents resulted in the defendant obtaining a total of approximately $32,000 in additional financial aid. The

parties agree that the defendant would have obtained substantial financial aid without his submitting false documents, but that the false documents increased the amount that he received. During this time, the defendant served as a board member at the school and donated approximately $35,125 to the school.

b. In or about February 2025, the defendant falsified certain terms of a lease agreement for office space that the defendant had entered as the lessor with a Philadelphia political campaign (the "political campaign"), the lessee. In particular, the defendant falsely modified terms of the lease agreement to increase the amount of notice that the political campaign was required to provide to the defendant to terminate the lease. If the political campaign had not discovered the false modifications to the lease agreement, the defendant would have received additional funds to which he was not entitled. The defendant's efforts in this regard did not result in his obtaining any funds, and he ceased making any efforts to obtain these funds before learning of the federal criminal investigation resulting in the charges in this case.

c. In or about July 2025, the defendant falsified tax information from the IRS and submitted the false information to a mortgage company to support his mortgage application for a home he was attempting to purchase. Ultimately, the defendant voluntarily withdrew his application with that mortgage company and pursued alternative financing. Thereafter, he secured the mortgage through a bank statement program, which did not

require tax documentation. As a result, the defendant successfully purchased the home. At no point did the defendant receive any funds from the initial mortgage company.

11. The defendant agrees to cooperate fully with the Internal Revenue Service ("IRS") as follows:

a. The defendant agrees to pay restitution to the IRS as directed by the Court in connection with the federal tax returns of the defendant and of his wife for the tax years 2019 through 2024, as charged in the criminal information. Unless directed otherwise, restitution payments should be sent by the Clerk of the Court for distribution to IRS - RACS, Attn: Mail Stop 6261, Restitution, 333 W. Pershing Avenue, Kansas City, MO 64108.

b. The defendant also agrees to pay Title 26 interest on the restitution amount. Interest runs from the last date prescribed for payment for the relevant tax periods through the date of sentencing. The government will provide an updated interest figure at sentencing.

c. Prior to sentencing, the defendant will remit payment of at least $120,000 (in addition to the $233,500 he has already paid the IRS in connection with the charged tax offenses) to the IRS or the Clerk, U.S. District Court, to be determined at the time any payments is to be made, to be applied to restitution owed as agreed to in subparagraph a and imposed by the Court at sentencing.

d. The defendant agrees to pay all remaining taxes, interest, and penalties, as determined by the IRS to be due and owing, within the period of probation/supervised release.

e. Prior to sentencing, the defendant will make a full financial disclosure to the IRS if requested.

f. Prior to sentencing, the defendant agrees to provide the IRS with all requested documents and information for the purpose of a civil audit.

g. The defendant agrees that he/she will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of the taxes and interest that he/she agrees to pay as restitution in subparagraph a.

h. The defendant agrees to sign IRS Form 8821 (Tax Information Authorization) at any time that it is requested until the termination of his/her probation/supervised release.

i. The defendant further agrees not to file any claims for refund of taxes, penalties, and interest for the years 2019 through 2024 or for any other amounts paid pursuant to this agreement.

j. The defendant agrees that subparagraphs a through i of this paragraph are appropriate conditions of probation/supervised release.

k. The defendant understands that the IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4), the defendant does not have the right to challenge the amount of this restitution-based assessment, *see* 26 U.S.C. § 6201(a)(4)(C), and neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

l. Nothing in this agreement shall limit the IRS in its collection of any taxes, penalties, or interest due from the defendant. The defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil tax liabilities, including tax, interest, and penalties.

12. In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to file any appeal, any collateral attack, or any other writ or motion that challenges the defendant's conviction, sentence, or any other matter relating to this prosecution, including any assessment, forfeiture, restitution, or the length or condition of supervised release, whether such an appeal, collateral attack, or other writ or motion arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to challenge the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty is are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:

i. that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 2 above;

ii. challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

iii. that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal or seek collateral relief pursuant to this subparagraph (b), no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph (b).

13. The defendant acknowledges that pursuing an appeal or any collateral attack waived in the preceding paragraph may constitute a breach of this plea agreement. The government recognizes that the mere filing of a notice of appeal is not a breach of the plea agreement. The government may declare a breach only after the defendant or his counsel thereafter states, either orally or in writing, a determination to proceed with an appeal or collateral attack raising an issue the government deems barred by the waiver. The parties

acknowledge that the pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

14. The defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

15. The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

16. The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

17. The parties have also entered a supplemental agreement that is filed under seal. It is agreed that the parties' guilty plea agreement, along with the sealed supplement, presents the entire agreement of the parties with regard to the defendant's guilty plea and sentence. The parties agree that neither has made any additional promise, agreement, or understanding other than those set forth in this written guilty plea agreement and the sealed supplement, and that no

additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

DAVID METCALF
United States Attorney

*/s/ Michelle L. Morgan* for
SALVATORE L. ASTOLFI
Chief, Criminal Division
Assistant United States Attorney

*/s/ Louis D. Lappen*
LOUIS D. LAPPEN
Assistant United States Attorney

WILLIAM F. DUNBAR, SR.
Defendant

BRIAN J. MCMONAGLE
Counsel for the Defendant

Date: 7-6-26

**Attachment**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-295** |
| **WILLIAM F. DUNBAR, SR.** | : | |

**<u>ACKNOWLEDGMENT OF RIGHTS</u>**

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1. I understand that I do not have to plead guilty.

2. I may plead not guilty and insist upon a trial.

3. At that trial, I understand

a. that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

b. that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

c. that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

d. that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

e. that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

f. that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

g. that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

h. that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

4. I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

5. I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

6. I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

7. Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

8. I acknowledge that no one has promised me what sentence the Court will impose. I am aware and have discussed with my attorney that, at sentencing, the Court will calculate the Sentencing Guidelines range, and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

(1) the nature and circumstances of the offense and my personal history and characteristics;

(2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

WILLIAM F. DUNBAR, SR.
Defendant

BRIAN J. MCMONAGLE
Counsel for the Defendant